# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
April 16, 2019

Lyle W. Cayce
Clerk

No. 18-30838
Summary Calendar

CLAIMANT ID 100299037,

      Requesting Party–Appellant,

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA
PRODUCTION COMPANY; BP, P.L.C.,

      Objecting Parties–Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:18-CV-5595

Before DENNIS, OWEN and ENGELHARDT, Circuit Judges.

PER CURIAM:*

      Alabama Association of Habitat for Humanity Affiliates, Inc. (Association) appeals the district court's denial of the Association's request for discretionary review of a decision by the Claims Administrator for the *Deepwater Horizon* Settlement Program. The district court did not abuse its discretion in denying review. We affirm.

---

     * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-30838

# I

In April 2010, an explosion on the *Deepwater Horizon*, a mobile offshore drilling unit leased by BP Exploration & Production, Inc., BP America Production Company, and BP, P.L.C. (collectively, BP), caused the discharge of millions of gallons of oil into the Gulf of Mexico.[1]  BP entered into the *Deepwater Horizon* Economic and Property Damages Settlement Agreement (Settlement Agreement) with a class of individuals and entities allegedly injured by the oil spill.  The Settlement Agreement created the Settlement Program under which claims for settlement benefits are reviewed by the Claims Administrator, whose decisions can be appealed to an Appeal Panel.

Businesses seeking settlement benefits as compensation for economic losses "must establish that their loss was due to or resulting from the Deepwater Horizon Incident" by meeting the applicable "causation requirement[]."  Once causation is established, claimants must prove an economic loss using the formula in Exhibit 4C of the Settlement Agreement.  Under Step 1 of the formula, claimants compare their variable profit in the Compensation Period—a consecutive three-month period of their choosing between May and December 2010—to their variable profit during the comparable months of the Benchmark Period—either 2009, the average of 2008 and 2009, or the average of 2007, 2008, and 2009.  Variable profit is determined by calculating the total monthly revenue over the period in question then subtracting the corresponding variable expenses over the same time period, including variable costs, variable portions of salaries, and other expenses.  If the claimant has less variable profit in the Compensation Period than in the Benchmark Period, it is entitled to compensation for that

---

[1] *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 418 (5th Cir. 2013).

difference.   Under Step 2 of the compensation formula, claimants are also compensated for incremental profits the claimant might have expected to generate in 2010 in absence of the spill, based on the claimant's revenue trend before the spill.

The Association is a non-profit that supports Habitat for Humanity affiliates throughout Alabama.   The Association services the affiliates by "providing training opportunities, resource development, [and] a variety of programs and services to grow capacity."  The Association also solicits grants on behalf of the affiliates.   Pertinent to this appeal, the Association receives grants from the Neighborhood Stabilization Fund (NSF).   The Association described NSF as

> a grant from the state of Alabama to three of our larger affiliates in Alabama-Southwest AL HFH (Mobile), Greater Birmingham HFH (Birmingham) & Madison HFH (Huntsville). . . . [T]his was . . . a pass-through grant, with most of the funds going to affiliates, but AAHA retaining a portion for administering the program & writing the grant on the affiliate's behalf.

The Association filed a claim with the Settlement Program.  Relying on the Association's description, the Settlement Program's accountants determined that NSF funds were pass-through and not revenue.  The Claims Administrator initially denied the Association's claim.  After the Appeal Panel remanded, the Association was granted an award, but the Claims Administrator again determined that NSF funds should be excluded from revenue and expenses.  The Association appealed to the Appeal Panel a second time, arguing that the NSF funds should have been included in revenue and therefore, the award should have been greater.  The Appeal Panel affirmed the Claims Administrator's decision.  The Association sought discretionary review in the Eastern District of Louisiana, which the district court denied.  The Association appeals.

No. 18-30838

**II**

We review the district court's denial of discretionary review of an Appeal Panel decision for abuse of discretion.[2] It is generally an abuse of discretion not to review a decision that "actually contradicted or misapplied the Settlement Agreement, or had the clear potential to" do so.[3] However, it is "wrong to suggest that the district court must grant review of all claims that raise a question about the proper interpretation of the Settlement Agreement."[4] A district court may deny a request for review that "involve[s] no pressing question of how the Settlement Agreement should be interpreted or implemented, but simply raise[s] the correctness of a discretionary administrative decision in the facts of a single claimant's case."[5] "It may be an abuse of discretion to deny a request for review that raises a recurring issue on which the Appeal Panels are split if 'the resolution of the question will substantially impact the administration of the Agreement.'"[6]

The Association argues that the district court abused its discretion by denying review because (1) Fifth Circuit precedent requires grant money to be considered revenue, (2) the NSF funds were not pass-through, and (3) pass-through funds are revenue.

We need not address these arguments. Even if the NSF funds should have been included in revenue, the corresponding variable expenses would

---

[2] *Claimant ID 100212278 v. BP Expl. & Prod., Inc.*, 848 F.3d 407, 410 (5th Cir. 2017) (citing *Holmes Motors, Inc. v. BP Expl. & Prod.*, 829 F.3d 313, 315 (5th Cir. 2016)).

[3] *Id.* (quoting *Holmes Motors*, 829 F.3d at 315).

[4] *Id.* (quoting *Holmes Motors*, 829 F.3d at 316); *see also In re Deepwater Horizon*, 785 F.3d 986, 999 (5th Cir. 2015) ("We do not intend any part of this opinion to turn the district court's discretionary review into a mandatory review. To do so would frustrate the clear purpose of the Settlement Agreement to curtail litigation.").

[5] *Claimant ID 100212278*, 848 F.3d at 410 (alterations in original) (quoting *In re Deepwater Horizon*, 641 F. App'x 405, 410 (5th Cir. 2016)).

[6] *Id.* (quoting *In re Deepwater Horizon*, 631 F. App'x 199, 203-04 (5th Cir. 2015)).

have to be "matched" to determine variable profit.[7]   As we have said, "[e]xpenses that can be readily traced to the recognized revenues are themselves recognized at the same time as those revenues."[8]   By its own admission, the Association's "NSP Activities" account is an expense account for NSF.   When the Association received NSF funds, it would retain an administration fee for its service, which was included in calculating the Association's revenue.   The remaining NSF funds would subsequently be distributed to Habitat for Humanity affiliates.   These distributions were recorded as "NSP Activities" expenses.   For all of the months in the Compensation Period and the Benchmark Period, the amount of NSF funds received by the Association, less the administration fees, equaled the amount of NSP Activities expenses.   Accordingly, even if the NSF funds should have been considered revenue, those funds would have had to be matched with the NSP Activities expenses, leaving only the administration fees as the Association's variable profit from the NSF grant.   If the Claims Administrator erred, that error was harmless.

The Association argues that matching the NSF revenues and expenses would be contrary to the Settlement Agreement's purpose.   However, matching is precisely what the Settlement Agreement calls for in a case like this, as confirmed by this court.[9]   Claimants are to be compensated for a reduction in variable profit, not a reduction in revenue.   The Association argues that this result precludes nonprofits from recovering under the Settlement Agreement because by definition, they do not generate profits.   As we have explained, however, "modern nonprofits are commercial entities that seek to generate

---

[7] *In re Deepwater Horizon*, 732 F.3d 326, 335 (5th Cir. 2013).

[8] *Id.* at 333.

[9] *In re Deepwater Horizon*, 858 F.3d 298, 302 (5th Cir. 2017) ("[T]he Claims Administrator must ensure that costs are registered in the same month as corresponding revenue, regardless of when those costs were incurred.").

No. 18-30838

cash surpluses."[10]  Those surpluses, like the administration fees in this case, are included in calculating a claimant's variable profit.

Assuming, *arguendo*, that NSF funds should be considered revenue, the district court still did not abuse its discretion in denying review.

**\*    \*    \***

AFFIRMED.

---

[10] *In re Deepwater Horizon*, 785 F.3d 1003, 1012 (5th Cir. 2015).